# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

TRACY PETE HILL,

                    Plaintiff,

-vs-                                                    Case No.  6:10-cv-46-Orl-GJK

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

# MEMORANDUM OF DECISION

     Tracy Pete Hill (the "Claimant"), appeals to the District Court from a final decision of the

Commissioner of Social Security (the "Commissioner") denying her application for benefits.

Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed

because: 1) the Administrative Law Judge (the "ALJ") failed to properly consider and assess

Claimant's reflex sympathetic dystrophy ("RSD") at step-two of the sequential evaluation

process and in determining Claimant's residual functional capacity ("RFC"); 2) due to the ALJ's

failure to consider and assess Claimant's RSD, the ALJ's RFC assessment is fatally flawed and

not supported by substantial evidence; and 3) the ALJ's credibility determination and

hypothetical question to VE are similarly flawed due to the ALJ's failures regarding Claimant's

RSD.  Doc. No. 9 at 18-30.[1]  The Commissioner's decision is **REVERSED and REMANDED**

**pursuant to sentence four of 42 U.S.C. § 405(g) because the ALJ failed to properly evaluate**

---

[1] Claimant also raises similar issues regarding the ALJ's evaluation of Claimant's Hepatitis C, left shoulder pain, rheumatoid arthritis, and fatigue.  Doc. No. 9 at 18-30.  However, Claimant primarily focuses on the ALJ's evaluation of Claimant's RSD, and the outcome of this case is ultimately determined by that evaluation.  *See* Doc. No. 9 at 18-30.  Therefore, the primary focus of this order is the ALJ's evaluation of Claimant's RSD.

Claimant's RSD in compliance with SSR 03-2p and, therefore, the decision is not supported by substantial evidence.

I.      **BACKGROUND.**

Claimant was born on September 9, 1956.  R. 27.  Claimant received an eleventh grade education and completed two years of music college studies during high school, but Claimant does not have a general education diploma ("GED") or a college degree.  R. 30.  Claimant's past employment experience includes working as a stage technician and a dog trainer.  R. 30-31.  The Commissioner previously awarded Claimant disability benefits in 1997 due to RSD, but after selling her mother's home, which Claimant inherited, Claimant's benefits were terminated in 2005 because she no longer met the financial eligibility requirements for disability benefits.  Doc. Nos. 9 at 11, 10 at 2; R. 15, 33, 240.   On September 29, 2006, Claimant filed a renewed application for benefits alleging an onset of disability as of 1997.  R. 99-102, 171. However, because Claimant only applied for Supplemental Security Income ("SSI") benefits, the effective onset date is the date Claimant applied for benefits – September 29, 2006.  *See* 20 CFR § 416.335 (SSI benefits are paid beginning in the month following the month the application is filed and no benefits may be paid for months preceding the month the application was filed); R. 9, 171; Doc. No. 9 at 1.  Claimant alleges disability due to: RSD in the right leg and ankle; severe pain associated with RSD; rheumatoid arthritis; vision loss; depression; and affective mood disorder. R. 99-102, 176, 219.

II.     **RSD – MEDICAL RECORD.**[2]

In August, September and October of 2006, treatment records show Claimant carried

---

[2] The current record contains no information or medical records related to Claimant's past award of benefits due to RSD.

diagnoses of history of RSD, rheumatoid arthritis – lasting for past eight years, chronic pain, osteoporosis, Hepatitis C, and anxiety.  R. 230-31, 233-34, 273-74.[3]   Diagnostic testing in September of 2006 showed Claimant's rheumatoid factor was high.  Doc. No. 345.  During that time, Claimant complained of pain in her wrists, elbows, knees, lower back. R. 273-74.

On November 29, 2006, Claimant presented to Dr. Clayton Linkous, M.D., for a consultative physical examination.  R. 240-44.  Claimant reported that she was applying for benefits due to RSD, rheumatoid arthritis and back pain.  R. 240.  Claimant stated that she developed RSD in 1991 after injuring her right leg in 1990. R. 240.  Claimant also reported that she was involved in three motor vehicle accidents in 1992-1994 which resulted in injuries to her neck and back.  R. 240.  Claimant's was taking Premarin, hydrocodone, Xanax, Zantac, an albuterol inhaler, Celebrex, and a muscle relaxer.  R. 240.

On physical examination, Claimant displayed a full range of motion and no motor deficits in her extremities.  R. 241.  Deep tendon reflexes were "two plus and equal bilaterally."  R. 241. Straight leg testing was negative bilaterally with intact sensation.  R. 241.  Handgrip was 40 on the right, but only 22 on the left.  R. 241.  Grip strength, however, was normal on the right and left.  R. 241.  Claimant was capable of tandem walking and was able to walk on her heels and toes, but she could not hop.  R. 241.  Claimant was able to get on and off the examination table with "some assistance."  R. 241.  X-rays revealed internal fixation fusion of the C6-C7 with some degenerative disk disease and minimal arthritic changes and some osteopenia in the right hand, but no significant rheumatoid or other changes.  R. 241.  Dr. Linkous diagnosed Claimant with RSD of the right leg, history of rheumatoid arthritis, and chronic back pain, status post fusion at C6-C7.  R. 241.  Dr. Linkous opined that Claimant was limited to standing six hours in

---

[3] The treatment records are handwritten and partially illegible.  R. 230-31, 233-34, 273-74.

an eight hour workday and no climbing.  R. 241.  However, Dr. Linkous also opined that Claimant had no restrictions in any "sedentary activities."  R. 241.

On January 5, 2007, Dr. Jeffrey Thomas, completed a non-examining medical records review and offered an RFC assessment.  R. 259-66.  Dr. Thomas opined that Claimant carries a primary diagnosis of rheumatoid arthritis and a secondary diagnosis of "S/P C6-7 fusion."  R. 259.  Dr. Thomas opined that Claimant retained the RFC for light work with the additional restrictions of only occasionally climbing ramps and stairs, balancing, stopping, kneeling, crouching, and crawling.  R. 260-61.  Dr. Thomas opined that Claimant could never climb ladders, ropes, or scaffolds.  R. 261.  Dr. Thomas also opined that Claimant should avoid concentrated exposure to hazards.  R. 263.  Dr. Thomas based his RFC assessment on Dr. Linkous's one-time consultative examination.  R. 260.  Dr. Thomas stated that Claimant's allegations "are not fully supported by objective medical findings."  R. 264.  Dr. Thomas did not mention Claimant's RSD.  R. 259-66.

From January 2, 2007 through April 9, 2007, Claimant presented to Dr. Ajaz Afzal, M.D., a board certified rheumatologist, on four occasions for treatment of her rheumatoid arthritis.  R. 348-60.  On January 2, 2007, Claimant complained of: recent weight loss; fatigue; weakness; pain and dryness in her eyes; chest pain; constipation; difficulty swallowing; anemia; color changes of hands and feet in the cold; hair loss; skin tightening; morning stiffness lasting one hour; muscle tenderness; joint swelling and pain; poor memory; muscle spasms; and difficulty staying asleep.  R. 348-49.  Physical examination showed: no dry eyes; no edema in extremities; good range of motion of shoulder joints; "okay" elbows; good range of motion of hips; no swelling of knee joints; positive crepitus in knee joints; no swelling or tenderness in

ankle joints; no active synovitis in hands, wrists or feet; good motor power; 8 of 18 tender points; negative Tinels and Phalens testing; and positive tender points on the spine.  R. 349-50.  Dr. Afzal diagnosed Claimant with: history of RSD; polyarthritis; myalgias and pain; muscle spasms; and pain in her knees.  R. 350.

On January 19, 2007, Claimant complained of morning stiffness, joint pain in hips, knees, and fee, and fatigue of 8 on a scale of 1 to 10.  R. 351.    X-rays revealed "diffuse osteopenia." R. 352.  Dr. Afzal's assessed: history of RSD; history of rheumatoid arthritis, but "clinically, does not have a very aggressive disease"; osteopenia; normal myalgias; Hepatitis C; and fatigue secondary to Hepatitis C.  R. 352.  On March 7, 2007, Claimant's complaints and physical examination were essentially unchanged except that Claimant displayed 10 of 18 tender points. R. 353.  On April 7, 2007, Claimant reported similar complaints, but stated that her pain was an 8 out of 10 on a 1 to 10 scale.  R. 355.  Claimant's physical examination revealed 12 of 18 tender points. R. 355.

On June 15, 2007, Claimant presented to Dr. Martha Pollock, a Diplomate of the American Board of Internal Medicine, for a consultative physical examination.  R. 296-301. Claimant complained of RSD in the right leg, rheumatoid arthritis, degenerative disc disease, and depression.  R. 296.  Dr. Pollock stated that Claimant "wears a right . . . leg brace," has "difficulty going up and down stairs," and "walks with a limp on the right."  R. 296.  Claimant reported that she cannot stand or walk for more than one or two hours at a time due to the pain in her right foot.  R. 296.   Due to her back pain, Claimant stated that she cannot sit, stand, or walk for more than one hour at a time.  R. 296. Physical examination showed "no difficulty getting on and off examination table, moderate difficulty squatting, and the [Claimant] is unable to heel and

toe walk or hop." R. 297. Diminished range of motion was present in the right ankle, but range of motion in other joints was normal. R. 297. Dr. Pollock diagnosed Claimant with RSD of right ankle and right foot drop, noting that "[t]he right lower extremity was somewhat cool to the touch with some modeling noted. . . ." R. 299. Dr. Pollock also diagnosed Claimant with history of low back pain and degenerative disc disease; history of depression; and history of rheumatoid arthritis. R. 300. Dr. Pollock noted that "[s]traight leg raising elicited pain across back at 30 degrees bilaterally," but "[t]here was no paravertebral muscle spasm," and "[t]he patient did have difficulty with orthopedic maneuvers." R. 300.[4]

From April 9, 2007 through May 2, 2008, Claimant presented to Dr. Thomas Porter, on referral from Dr. Afzal, for treatment of Claimant's RSD and rheumatoid arthritis. R. 405-13. Dr. Porter's treatment notes, some of which are handwritten, show that Claimant has longstanding and continuing RSD in the right leg. R. 405-09, 413. Claimant reported experiencing the greatest pain in her right lower extremity constantly, but also bilateral knee pain and lower back pain. R. 410. Claimant stated she experiences occasional numbness, tingling, and weakness in the right leg. R. 410. Changes in the weather cause swelling and pain. R. 410. On April 9, 2007, Dr. Porter prescribed Lortab, 10 milligrams, three times daily. R. 413. On May 11, 2007, Claimant continued to complain of "persistent pain" and Dr. Porter continued Claimant on Lortab. R. 409. On August 24, 2007, Claimant's right ankle and foot displayed intermittent swelling and color changes. R. 408. On December 21, 2007, Claimant reported increased pain and Dr. Porter prescribed Tramadol, 50 milligrams. R. 407. On February 4, 2008, Claimant stated that the Tramadol did not work and Dr. Porter prescribed Oxycodone, 5

---

[4] On June 21, 2007, Claimant presented to Dr. Raymond F. Barnes, an ophthalmologist, for a consultative physical examination regarding Claimant's vision loss. R. 302. Although Dr. Barnes did not evaluate Claimant for RSD, his notes indicate that Claimant is "dealing with [RSD]." R. 302.

milligrams as need for pain.  R. 406.

On May 2, 2008, Claimant reported "persistent pain" in her low back extending into her left hip.  R. 405.  Claimant also reported "distinct pain" in her right lower leg to the right knee.  R. 405.  Claimant described the pain as constant, aching, and burning in nature.  R. 405. Dr. Porter's notes show there is "intermittent color change of the [right] foot to blue and intermittent cold sensation [of the right] foot."  R. 405.  Claimant stated that she had some relief with the Oxycodone.  R. 405.  Physical examination revealed: antalgic gait with a limp in the right lower extremity; unable to heel or toe walk; limited range of motion of the lumbar spine with pain; no new strength or sensor deficits; no edema or color difference between the right foot and left foot.  R. 405.  Dr. Porter's impressions were: "known RSD [of the right lower extremity]"; rheumatoid arthritis in the hands, hips, and knees; and degenerative disc disease of the lumbar spine.  R. 405. Dr. Porter's treatment plan was to continue Oxycodone, 5 milligrams, and to consider lumbar facet injections.  R. 405.

From November 13, 2008 through July 9, 2009, Claimant was treated by Drs. Kulmeet S. Kundlas and Mathan Sukumar for chronic pain.  R. 383, 385-86, 418-28.  The treatment records reveal diagnoses of chronic pain syndrome and generalized osteoarthritis.  R. 385, 418-19, 421, 424.  On January 16, 2009, Dr. Mathan Sukumar notes state that he increased Claimant's dosage of Oxycodone for pain.  R. 419.  Treatment records show that Claimant's was in constant pain. R. 420.

From February 25, 2009 to April 1, 2009, Claimant presented twice to Dr. Gerald Nickerson, M.D., complaining of low back pain radiating into hips, bilateral knee pain, left shoulder pain, and upper back pain.  R. 373-76.  Claimant reported that her pain began after

being injured while working at the dog track in the early 1990's.  R. 375.  Claimant's current treatment included taking Oxycodone, 10 milligrams, six times a day.  R. 375.  Dr. Nickerson's impressions were lumbar facet syndrome, lumbar degenerative disk disease, thoracic spine pain, myofascial pain syndrome, and chronic pain syndrome.  R. 376.  On April 20, 2009, x-rays revealed mild degenerative changes of the thoracic spine.  R. 369.  A CT scan of the lumbar spine without contrast revealed: mild anterior spondylolisthesis of the L5 on S1; moderately extensive bilateral degenerative facet changes with sclerosis and subchondral cystic changes of the L5-S1; no disc herniation; and mild degenerative disc and facet changes at upper lumbar levels.  R. 371.

## III.    PROCEEDINGS BELOW.

Claimant's application was denied initially and upon reconsideration.   R.  99-102.  Thereafter, Claimant requested a hearing before an ALJ.  R. 116.  On May 6, 2009, a hearing was held before ALJ Philemina M. Jones.  R. 22-98.  Claimant, who was represented by counsel, and Vocational Expert (the "VE"), Jane Beougher, were the only persons to testify at the hearing.  R. 22-98.

At the hearing, Claimant testified that she is disabled due to "RSD, rheumatoid arthritis, hepatitis C, a broken shoulder, [and] back pain from the RSD."  R. 34.  Claimant stated that the RSD "has gone into my back and my left hip."  R. 34.  Claimant stated that she was taking pain medication and muscle relaxers to treat the RSD.  R. 34.  Claimant also testified that she was previously awarded disability benefits due to RSD.  R. 45.

On September 2, 2009, the ALJ issued a decision.  R. 9-21. In her decision, the ALJ made the following findings:

1. The Claimant has not engaged in substantial gainful activity since September 29, 2006, the application date;

2. The Claimant has the following severe impairments which are "severe" in combination: lumbar facet syndrome, degenerative disc disease with history of cervical fusion, myofacial pain syndrome/chronic pain syndrome, osteoarthritis, hepatitis C, left eye blindness, history of retinal ischemia, and depression;

3. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

4. After careful consideration of the entire record, [the ALJ] finds that the Claimant has the [RFC] to perform less than the full range of light work defined in 20 CFR 416.967(b). She is able to lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. She is able to stand/walk for about a total of six hours per workday. She is able to sit for at least a total of six hours per workday. She is [able to] perform no stooping, crawling, climbing, crouching, or balancing. Due to left eye blindness, she must avoid concentrated exposure to hazards. She can perform simple, routine, repetitive tasks;

5. The Claimant is unable to perform any past relevant work;

6. The Claimant was born on September 9, 1956 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed;

7. The Claimant has a limited education and is able to communicate in English;

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is "not disabled," whether or not the Claimant has transferable job skills;

9. Considering the Claimant's age, education, and work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the Claimant can perform; and

10. The Claimant has not been under a disability, as defined in the Social Security Act, since September 29, 2006, the date the application was filed.

R. 9-21. Thus, the ALJ determined that the Claimant is not disabled. R. 9-21.

    As set forth above, at step-two of the sequential evaluation process, the ALJ determined

that Claimant has the following severe impairments, which are severe in combination: lumbar

facet syndrome, degenerative disc disease with history of cervical fusion, myofascial pain syndrome/chronic pain syndrome, osteoarthritis, hepatitis C, left eye blindness, history of retinal ischemia, and depression.  R. 11.  Even though the ALJ recognized that Claimant had previously been awarded disability benefits due to RSD, the ALJ did not find Claimant's RSD was a severe impairment.  R. 11, 15.

The ALJ does mention Claimant's RSD several times throughout her decision.  At step-two, the ALJ notes that August 15, 2006, treatment records indicate Claimant had a history of RSD, and in January of 2007, Claimant was assessed with a history of RSD.  R. 11-12.  When determining Claimant's RFC, the ALJ notes that on November 29, 2006, a consulting examining physician diagnosed Claimant with RSD of the right leg, but indicated Claimant was able to stand up to six hours a day, and had no limitations in the ability to lift, carry, push, or pull were offered by the consultant.  R. 14.  The ALJ also stated that on June 15, 2007, another consultative examiner diagnosed Claimant with right ankle RSD and right foot drop, but described no particular work-related limitations.  R. 14.

The ALJ also mentions RSD in her credibility determination.  The ALJ states that Claimant "testified that she has ongoing problems with [RSD]. . . . Her RSD treatments have included pain medications (e.g. Oxycodone) and muscle relaxants prescribed by Dr. Nickerson." R. 15.   The ALJ also notes that Claimant testified that "RSD causes constant pains of the right leg, shoulder, and back," and Claimant takes medications to help relieve her pain to some degree. R. 16.   The ALJ states that Claimant claimed to walk with a limp due to her RSD.  R. 16. Ultimately, the ALJ concludes that Claimant's subjective statements regarding the intensity, persistence and limiting effects of all of her symptoms are not credible "to the extent they are

inconsistent with the [ALJ's] RFC determination."  R. 16.  The ALJ lists several reasons for finding Claimant's subjective statements not credible.  R. 17-19.  However, in the decision, the ALJ made no specific findings as to Claimant's RSD and what, if any, functional limitations result from that condition.  R. 9-21.

After the ALJ's decision, Claimant requested review before the Appeals Council.  R. 5. On November 6, 2009, the Appeals Council denied Claimant's request for review.   R. 1-3. Thereafter, Claimant sought review of the Commissioner's final decision in the District Court. Doc. No. 1.

## IV.   THE ISSUES.

The Claimant raises three related issues regarding the Commissioner's final decision:

1. The ALJ erred by failing to properly consider and assess Claimant's RSD at step-two and in determining Claimant's RFC in the sequential evaluation process;

2. Due to the ALJ's failure to consider and assess Claimant's RSD, the ALJ's RFC assessment is fatally flawed and not supported by substantial evidence; and

3. The ALJ's credibility determination and hypothetical question to the VE are similarly flawed and unsupported by substantial evidence.

Doc. No. 9 at 18-29.[5]  Claimant requests that the Court enter an order reversing the final decision of the Commissioner and remanding for an award of benefits.  Doc. No. 9 at 24-25, 30. Alternatively, Claimant requests that the case be reversed and remanded pursuant to sentence four of Section 405(g).  Doc. No. 9 at 24.  If the Court remands the case for a supplemental hearing, Claimant requests that the Court "remand the matter to a different ALJ as the [Claimant]

---

[5] As set forth above, Claimant also raises similar issues concerning Claimant's Hepatitis C, rheumatoid arthritis, and left shoulder pain.  *See* supra n. 1.  However, because resolution of this case turns on the ALJ's evaluation of RSD, the Court has slightly narrowed the issues listed above.

does not believe the ALJ will change her position if another hearing is ordered." Doc. No. 9 at 24.

The Commissioner generally maintains that substantial evidence supports the final decision of the Commissioner. Doc. No. 10 at 1-20.[6] The Commissioner argues that the ALJ properly considered and assessed Claimant's RSD by noting in her decision that Claimant had been diagnosed with RSD and had previously been awarded benefits due to RSD. Doc. No. 10 at 11-13 (citing SSR 03-02p). Moreover, by finding Clamant not fully credible as to her subjective complaints of pain, the Commissioner maintains that the ALJ properly evaluated the impact of Claimant's RSD on her ability to perform basic work activities. Doc. No. 10 at 13. Accordingly, the Commissioner asserts that the final decision should be affirmed. Doc. No. 10 at 20.

V.   **LEGAL STANDARDS.**

A.   **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he

---

[6] The Commissioner's memorandum does not address the issues raised by Claimant in the order presented by Claimant. Doc. No. 10 at 4 n. 2.

must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.      THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

-13-

### C.    REMEDIES.

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405(g)(Sentence Four).   To remand under sentence four, the district court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.   *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.   *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).   A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The district court

may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C.

§ 405(g); or under both sentences.  *Jackson*, 99 F.3d at 1089-92, 1095, 1098.  Where the district

court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be

appropriate to allow the Commissioner to explain the basis for his decision.  *Falcon v. Heckler*,

732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his

basis for determining that claimant's depression did not significantly affect her ability to work).[7]

## VI.   ANALYSIS.

As the ALJ noted, in 1997, Claimant was awarded disability benefits due to RSD.  R. 15,

33, 240.  Social Security Ruling 03-02p defines RSD as "a chronic pain syndrome most often

resulting from trauma to a single extremity."  *Id.*[8]  The Commissioner's policy for evaluating

RSD, SSR 03-2p, describes it as "a unique clinical syndrome," and states that "[i]t is

characteristic of this syndrome that the degree of pain reported is out of proportion to the severity

of the injury sustained by the individual."  *Id.*  SSR 03-2p provides that the complaints of pain

associated with RSD include: swelling; changes in skin color and skin temperature; muscle and

joint pain; restricted ranges of motion; and osteoporosis.  *Id.*  However, "[c]lincial progression

[of RSD] does not necessarily correlate with specific timeframes."  *Id.*  Indeed, the symptoms of

RSD may spread to "include other extremities or regions."  *Id.*  SSR 03-2p also provides that

"conflicting evidence in the medical record is not unusual in cases of RSD due to the transitory

---

[7] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

[8]  The Eleventh Circuit has stated that "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.  Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference. . . ."  *Klawinski v. Commissioner of Social Security*, 391 Fed.Appx. 772, 775 (11th Cir. 2010) (unpublished) (citations omitted).

nature of its objective findings and the complicated diagnostic process involved," and "[c]larification of any such conflicts in the medical evidence should be sought first from the individuals treating [physicians] or other medical sources." *Id.*

The medical record contains numerous diagnoses of RSD by treating and consulting examining physicians. R. 230-31, 233-34, 241, 273-74, 299, 350, 405-409, 413. Claimant has also received treatment for chronic pain and other symptoms associated with RSD, such as osteoporosis. R. 383, 385, 418-28. Based upon the Claimant's prior award of benefits due to RSD and the current medical record, Claimant suffers from long standing, ongoing, and well documented RSD.

"The pathogenesis of RSD is not entirely understood, and it is not a Listed Impairment under the Regulations. The [Commissioner] has recognized both of these facts and has issued a Ruling, SSR 03-2p, to explain [the Commissioner's] policies for developing and evaluating disability claims based on RSD." *Bernstein v. Astrue*, Case No. 3:09-cv-17-J-34MCR, 2010 WL 746491 at *5 (M.D. Fla. Mar. 3, 2010) (citing *Brooks v. Barnhart*, 428 F.Supp.2d 1189, 1192 (N.D. Ala. 2006)). In evaluating disability claims based on RSD, SSR 03-2p provides:

> Claims in which the individual alleges [RSD] are adjudicated using the sequential evaluation process, just as for any other impairment. Because finding that [RSD] is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs in the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder. Other symptoms, including such things as extreme sensitivity to touch or pressure, or abnormal sensations of heat or cold, can also be associated with this disorder. Given that a variety of symptoms can be associated with [RSD], <u>once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work</u>

<u>activities</u>. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. <u>Although symptoms alone cannot be the basis for finding a medically determinable impairment, once the existence of a medically determinable impairment has been established, an individual's symptoms and the effect(s) of those symptoms on the individual's ability to function must be considered both in determining impairment severity and in assessing the individual's residual functional capacity (RFC), as appropriate</u>. If the adjudicator finds that pain or other symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to perform basic work activities, a "severe" impairment must be found to exist.

<u>Proceeding with the sequential evaluation process</u>, when an individual is found to have a medically determinable impairment that is "severe," the adjudicator must next consider whether the individual's impairment(s) meets or equals the requirements of the Listing of Impairments contained in appendix 1, subpart P of 20 CFR part 404. Since [RSD] is not a listed impairment, an individual with [RSD] alone cannot be found to have an impairment that meets the requirements of a listed impairment. However, the specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist. Psychological manifestations related to [RSD] should be evaluated under the mental disorders listings, and consideration should be given as to whether the individual's impairment(s) meets or equals the severity of a mental listing.

For those cases in which the individual's impairment(s) does not meet or equal the listings, an assessment of RFC must be made, and adjudication must proceed to the fourth and, if necessary, the fifth step of the sequential evaluation process. Again, in determining RFC, all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities. Careful consideration must be given to the effects of

> pain and its treatment on an individual's capacity to do sustained
> work-related physical and mental activities in a work setting on a
> regular and continuing basis.
>
> Opinions from an individual's medical sources, especially treating
> sources, concerning the effect(s) of [RSD] on the individual's
> ability to function in a sustained manner in performing work
> activities, or in performing activities of daily living, are important
> in enabling adjudicators to draw conclusions about the severity of
> the impairment(s) and the individual's RFC. In this regard, any
> information a medical source is able to provide contrasting the
> individual's medical condition(s) and functional capacities since
> the alleged onset of [RSD] with the individual's status prior to the
> onset of [RSD] is helpful to the adjudicator in evaluating the
> individual's    impairment(s)    and    the    resulting    functional
> consequences.

*Id.* (emphasis added, citations omitted).   As set forth above, Claimant has a medically

determinable impairment of RSD.  "According to SSR 03-2p, the ALJ must then evaluate the

intensity, persistence, and limiting effects of [claimant's RSD] symptoms to determine her ability

to do basic work activities."  *Bernstein*, 2010 WL 746491 at *5.

In this case, although the ALJ refers to Claimant's RSD in her decision, the ALJ failed to

specifically evaluate Claimant's RSD, in accordance SSR 03-2p, at any step in sequential

evaluation process.  R. 9-21.  In a factually similar case, *Bernstein*, 2010 WL 746491 at *5, the

court held that "the mere mention of diagnosis and symptoms which may be associated with

RSD does not equate to an evaluation of the intensity, persistence, and limiting effects of [a

claimant's] RSD."  *Id.*   The Court finds *Bernstein* persuasive, and, in this case, the ALJ's failure

to evaluate Claimant's RSD in accordance with SSR 03-2p constitutes reversible error.

The ALJ's failure to evaluate Claimant's RSD in accordance with SSR 03-2p at step-two

of the sequential evaluation process necessarily undermines the ALJ's RFC assessment,

credibility determination, and hypothetical question to the VE.  *See generally Bernstein*, 2010

WL 746491 at *7-9.   For example, the ALJ's determination that Claimant's subjective statements were not entirely credible is not supported by substantial evidence without a proper evaluation of Claimant's RSD because RSD is characterized with complaints of pain which are "out of proportion to the severity of the injury," and objective findings can be minimal.  SSR 03-2p; *Bernstein*, 2010 WL 746491 at *7-8.  "Additionally, a conservative degree of treatment does not warrant discrediting a plaintiff suffering from RSD."  *Bernstein*, 2010 WL 746491 at *8. Therefore, the ALJ's rejection of Claimant's subjective allegations of pain was likely a result of the ALJ's failure to properly evaluate Claimant's RSD.  *Id.*

Accordingly, on remand, the ALJ must:

1. Evaluate Claimant's RSD in accordance with SSR 03-2p, at step-two, including a specific evaluation of the intensity, persistence, and limiting effects of Claimant's RSD.

2. After appropriate evaluation of Claimant's RSD, the ALJ is directed to make a determination regarding the severity of Claimant's RSD at step-two of the sequential evaluation process before moving on to the remaining steps;

3. Reconsider Claimant's RFC;

4.  Re-evaluate Claimant's credibility; and

5. Pose a hypothetical question to the VE which includes all of Claimant's limitations. *Bernstein*, 2010 WL 746491 at *9.[9]

---

[9] Because the ALJ did not properly evaluate Claimant's RSD, the decision is not supported by substantial evidence and is not based upon the proper legal standards.  Although, Claimant requests reversal for an award of benefits, based on the record before the Court, the Court cannot find that the Claimant is disabled beyond a doubt or suffered an injustice. *See Davis*, 985 F.2d at 534 (claimant entitled to award of benefits where evidence establishes disability beyond a doubt); *Walden*, 672 at 840 (claimant entitled to award of benefits where claimant has suffered an injustice).  Accordingly, a reversal and a remand for further proceedings consistent with this opinion is appropriate. On remand, while the Commissioner <u>may</u> choose to send this case to another ALJ, based upon the record before this

## VII.    <u>CONCLUSION</u>.

As set forth above, because the ALJ did not properly evaluate Claimant's RSD, in accordance with SSR 03-2p, the decision is not supported by substantial evidence and is not based on upon the proper legal standards.  Accordingly, it is hereby **ORDERED** that:

1.   The final decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for a new hearing and decision which complies with the provisions of this order; and

2.   The Clerk is directed to enter judgment in favor of the Claimant and close the case.

**DONE** and **ORDERED** in Orlando, Florida on February 16, 2011.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Chadwick J. Lawrence, Esq.
The Lawrence Law Firm
920 West Emmett
Kissimmee, FL 34741

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

---

Court, there is no evidence warranting an order from this Court directing the Commissioner to assign the case to a different ALJ.

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801